UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| John McHugh,<br><br>        Plaintiff,<br><br>    v.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>        Defendant.<br>_____/ | No. C 06-3616 JL<br><br>**ORDER REMANDING CASE FOR NEW ADMINISTRATIVE HEARING** |

## Introduction

Plaintiff/claimant seeks social security disability insurance benefits and asks the court to remand his case to the ALJ to make findings that Plaintiff contends were omitted by the ALJ. Defendant seeks summary judgment affirming the ruling of the ALJ, which denied benefits to Plaintiff.

The Court hereby remands the case to the ALJ for the purpose of sufficiently developing the record as to whether the claimant's residual functional capacity is sufficient to continue the claimant's prior work. In all other regards, the ALJ's ruling is affirmed.

## Procedural History

On November 26, 2002, Plaintiff filed for Social Security disability insurance benefits (DIB). (TR 23, 79.) A series of denials, appeals, and denials on appeal ensued.

On August 18, 2003, the Social Security Administration (SSA) denied Plaintiff's claim. (TR 49.) On October 6, 2003, Plaintiff filed for reconsideration. (TR 53.) On October 29, 2003 the SSA declined Plaintiff's claim once again. (TR 55.) On November 23, 2003, Plaintiff timely requested a hearing before an administrative law judge (ALJ). (TR 59.) On May 26, 2004 and November 4, 2004, ALJ F. Neil Aschemeyer held hearings on Plaintiff's claim. (TR 351-409.) On December 8, 2004, the ALJ denied Plaintiff's claim. (TR 29.) Plaintiff filed a request for review of the ALJ's decision, and on June 14, 2005 the SSA denied the request. (TR 5.) On June 6, 2006, Plaintiff filed the action at bar. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). All parties consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c) and Civil Local Rule 73.

**Factual Background**

Plaintiff James McHugh is a former Marine and telecommunications technician who seeks Social Security disability insurance benefits. (TR 79, 367.) Defendant Michael J. Astrue is the Commissioner of Social Security.

Plaintiff seeks to establish that he became disabled prior to December 31, 1997, the last date that Plaintiff was insured. (TR 354.) Plaintiff alleges that June 18, 1993 is the onset date of his disability because that is the date of the earliest medical record that attests to his alleged disability. (TR 356.) Prior to filing this DIB claim, Plaintiff had not performed substantial gainful activity (employment) in over 10 years. (TR 389.)

Plaintiff was fired from his job at WorldCom in 1991. (TR 111, 375.) Plaintiff claims to have suffered from bouts of depression throughout his life, including an episode caused by his termination from WorldCom. (TR 380.) Since WorldCom fired Plaintiff, Plaintiff has lived on his savings and has not worked. (TR 389.)

On April 6, 1992, Plaintiff joined a clinical study testing anti-anxiety medication. (TR 333.) A physician on the project, Dr. Walton T. Roth, found that Plaintiff had Generalized Anxiety Disorder and Social Phobia. (*Id.*) Plaintiff exhibited four symptoms of depression

but lacked the minimum 5 symptoms needed to meet the criteria of a depressive episode. (*Id.*)

In late 1992 or early 1993, Plaintiff pursued a worker's compensation claim (apparently against WorldCom). (TR 387.) In December of 1993, Drs. Miles L. Weber and Sandra H. Klein examined Plaintiff at the request of the worker's compensation insurer for the purpose of resolving the matter. (TR 398.) On December 10, 1993, Dr. Lawrence Petrakis examined Plaintiff at Plaintiff's request, for the same purpose. (TR 323, 396.) The action ultimately settled for $7,000 in 1995. (TR 387.)

From June of 1993 until October of 1994, Plaintiff received treatment for depressive symptoms from Dr. Richard Delman on 23 occasions. (TR 149-50.) Dr. Delman submitted a report on behalf of Plaintiff and claimed to have reviewed, *inter alia*, documents from Plaintiff's WorldCom personnel file. (TR 149.)

The ALJ presiding at the hearing of Plaintiff's DIB claim references Drs. Weber and Klein in his opinion, but did not expressly mention Dr. Petrakis. (TR 22-29.) On November 4, 2004, Dr. Thomas Singer, having read the entire medical record but *not* having examined or treated Plaintiff, testified before the ALJ regarding Plaintiff's medical condition. (TR 356, 386-409.) Dr. Singer, in his testimony before the ALJ, noted the findings of Dr. Petrakis, including that Plaintiff had insufficient symptoms to be diagnosed as depressed and that Plaintiff was only slightly functionally impaired. (TR 396-97.) The opinion of the ALJ references Dr. Singer's testimony. (TR 22-29.)

The ALJ found that Plaintiff's allegations were not entirely credible. (TR 28-29.) The ALJ nonetheless found that Plaintiff suffered severe impairments. (TR 23.) The ALJ also found, however, that those impairments alone did not automatically qualify Plaintiff for DIB. (TR 24.)

The ALJ determined that Plaintiff had sufficient residual functional capacity to perform his past work. (TR 28-29.) As a result, the ALJ concluded that Plaintiff was not disabled and not entitled to DIB. (TR 29.)

## Legal Standard

The trial court must not disturb the decision of an ALJ if the decision is supported by substantial evidence and not based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" must consist of "more than a mere scintilla, but less than a preponderance," such that a "reasonable mind might accept [the evidence] as adequate to support [the ALJ's] conclusion." *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990) (citations removed) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) and *Desrosiers v. Sec'y of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988)).

A court must consider the record as a whole, weighing both evidence that supports and evidence that contradicts the ALJ's opinion. *Tackett*, 180 F.3d at 1098. If the evidence can reasonably support the opinion, a court may not substitute its own judgment. *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001).

## Discussion

Plaintiff argues that the ALJ's opinion is flawed for four reasons. First, Plaintiff contends that the ALJ erred by rejecting the opinion of Plaintiff's treating physician. Second, Plaintiff contends that the ALJ erred by failing to reference the opinion of Dr. Lawrence Petrakis. Third, Plaintiff contends that the ALJ erred by omitting an alleged impairment from a hypothetical. Fourth and finally, Plaintiff contends that the ALJ failed to fully develop the record regarding the demands of Plaintiff's past relevant work. As explained below, the ALJ did err in the fourth instance, but not in the first three.

**a. Whether the ALJ erred by rejecting the opinions of Dr. Delman, the Plaintiff's treating physician.**

When a claimant applies for disability insurance benefits (DIB), the Social Security Administration always considers the medical opinions in a claimant's case record. 20 C.F.R. § 404.1527(b) (2008); 20 C.F.R § 416.927(b) (2008). The opinion of a *treating* physician, who actually treats the patient over a period of time rather than just examining the patient or reviewing the patient's record, generally receives more deference than the

opinions of non-treating sources. 20 C.F.R. § 404.1527(d) (2008); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Prior to bringing this claim, the Plaintiff received treatment from Dr. Richard Delman for symptoms of depression on 23 occasions from June of 1993 through October of 1994. (TR 149.) The ALJ rejected Dr. Delman's view that Plaintiff was depressed in favor of two reports by examining, non-treating physicians (Drs. Weber and Klein) and the testimony of Dr. Singer - - an impartial medical expert who reviewed the entire medical record but neither treated nor examined the claimant. (TR 22-29.) Accordingly, the ALJ did not give more deference to the treating physician even though such deference is normally required by 20 C.F.R. 404.1527(d).

When an ALJ rejects the opinion of a treating physician in favor of a contrary opinion of one or more other physicians, the ALJ must explain the rejection with *specific and legitimate reasons* that are supported by *substantial evidence* in the record. *Lester*, 81 F.3d at 830; *see also* 20 C.F.R. 404.1527(d)(2) (2008) (requiring the SSA to give "good reasons" supporting the level of weight that the agency applies to a physician's opinion). However, as explained below, specific reasons were not required under these circumstances and the requirement of substantial evidence was satisfied.

**i. Specific and legitimate reasons were not required because the non-treating physicians conducted independent clinical findings.**

An ALJ satisfies the duty of providing specific and legitimate reasons for rejecting the contested opinion of a treating physician by "setting out a *detailed and thorough* summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (emphasis added) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)); *see also Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). However, when the ALJ relies upon the opinion of a non-treating physician *who conducts independent clinical findings* that differ from the findings of the treating physician, the ALJ *need not* set forth specific, legitimate

reasons for disregarding the treating physician's opinion. *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985). Objective clinical tests qualify as substantial evidence. *Id.* Where medical testimony is conflicting, a reviewing court must uphold the decision of the ALJ if the evidence permits more than one rational interpretation. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984); *see also Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971) (holding that where there is conflicting evidence supporting either outcome, the reviewing court must affirm the decision that was actually made.)

In his decision on the Plaintiff's claim, the ALJ notes that he gives less weight to Dr. Delman's opinion because Dr. Delman did not review all of the records that were relevant to the Plaintiff's circumstances. (TR 27.) The ALJ, in his decision, does not address Dr. Delman's, claim in his letter that he reviewed the Plaintiff's entire record in addition to treating Plaintiff. (TR 149.) The ALJ also did not give great weight to Dr. Delman's opinion because it was contradicted by the examinations of both a consultative psychologist and a consultative psychiatrist. (TR 27.) However, the ALJ also does not address the fact that those reports were prepared by physicians who were 1) hired by a Workers' Compensation Insurer, 2) working in concert such that it would be unlikely for their reports to conflict, and 3) working on a worker's compensation claim and not a DIB claim. (TR 398.) Nonetheless, the examining physicians made independent clinical findings that contradict the opinion of the treating physician. Thus, under *Miller*, the ALJ is not required to set forth specific reasons for disregarding the opinion of the treating physician since the independent clinical findings of the non-treating physicians must be viewed as substantial evidence. Furthermore, the report of Dr. Petrakis, who was hired by *Plaintiff* during Plaintiff's worker's compensation action, supports the opinions of Drs. Weber and Klein and contradicts the opinion of Dr. Delman. (TR 396-97.)

**ii. The ALJ's opinion was supported by substantial evidence because the decision was based on the report of a licensed physician who had examined Plaintiff.**

At a minimum, for evidence to be substantial it must be "more than a scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The evidence can be less than a preponderance and still be substantial. *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990). The expression "substantial evidence" means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). "[A] written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence may be received as evidence in a disability hearing and, despite its hearsay character and an absence of cross-examination, and despite the presence of opposing direct medical testimony and testimony by the claimant himself, may constitute *substantial evidence* supportive of a finding [that is] adverse to the claimant." *Richardson v. Perales*, 402 U.S. 389, 402 (1971). The ALJ relied on the reports of Drs. Weber and Klein. These doctors both examined Plaintiff and provided reports. Reports by examining physicians are substantial evidence, and therefore the ALJ's opinion was supported by substantial evidence.

**b. Whether the ALJ made an error of law by ignoring, the report of Dr. Petrakis.**

When a claimant applies for disability insurance benefits (DIB), the Social Security Administration always considers the medical opinions in a claimant's case record. 20 C.F.R. § 404.1527(b) (2008); 20 C.F.R § 416.927(b) (2008). An ALJ errs by ignoring the medical opinions of examining physicians. *Ghokassian v. Shalala*, 41 F.3d 1300, 1303 (9th Cir. 1994). The ALJ entirely omitted any mention of the report of Dr. Petrakis, the physician who testified for the Plaintiff against Drs. Weber and Klein during the Plaintiff's workers' compensation dispute. (TR 22-29.) The ALJ's decision included information from Drs. Weber and Klein, and the ALJ's decision is consistent with that information, which was

adverse to Plaintiff. (TR 25-26.) Because all medical reports must be considered in an ALJ's opinion and because the ALJ did not include the report of Dr. Petrakis, the ALJ erred by omitting the report.

Harmless error occurs where a mistake is non-prejudicial to the claimant. *Stout v. Comm'r of Social Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Harmless error also occurs when a mistake is irrelevant to an ALJ's decision. *Id.*

In the course of Plaintiff's workers' compensation action, he was examined by Dr. Lawrence Petrakis. (TR 323.) The ALJ made no explicit reference to Dr. Petrakis' report. (TR 22-29.) However, he did rely on the testimony of the impartial medical expert, Dr. Singer, who testified during hearings on the Plaintiff's worker's compensation action, and Dr. Singer noted the findings of Dr. Petrakis in his testimony. (TR 396-97.) Dr. Singer cited Dr. Petrakis' finding that the Plaintiff lacked the number of symptoms necessary for a diagnosis of depression. (TR 397.) Dr. Singer also noted that Dr. Petrakis had determined that Plaintiff was only slightly functionally impaired. (TR 397.) Although the ALJ technically erred by omitting Dr. Petrakis' report from his decision the omission was irrelevant to the outcome and thus harmless because it was incorporated in Dr. Singer's testimony.

**c. Whether the ALJ erred by posing a hypothetical to the vocational expert that excluded one of the symptoms which Plaintiff allegedly suffered.**

When an ALJ presents a hypothetical to a vocational expert (VE) but the hypothetical does not include all of the claimant's limitations, the VE's testimony has no evidentiary value to support a finding that the claimant can or cannot perform a job. *Delorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991). If an ALJ omits a claimant's limitation, the omission requires remand. *Id.* But an ALJ does not err by omitting from a hypothetical a limitation that the claimant claims but the ALJ finds does not exist. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Similarly, an ALJ may accept or reject alleged restrictions in a hypothetical question that are not supported by substantial evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). An omission in a hypothetical question is objectionable "only if the assumed facts could not be supported by

the record." *Magallanes v. Bowen*, 881 F.2d 747, 757 (9th Cir. 1989) (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)).

Plaintiff alleged that his impairments included fatigue. The ALJ did not find such an impairment. Based on the medical opinions that the ALJ reviewed, he found that 1) Plaintiff's allegations were not entirely credible, and 2) Plaintiff only suffered mild limitations on his ability to maintain concentration, persistence, and pace. (TR 28-29.) The ALJ noted Plaintiff's alleged "lack of energy," but found that this allegation conflicted with the testimony of Drs. Weber and Singer. (TR 23, 26.) Since the evidence contradicted a finding that Plaintiff's impairment included fatigue, it was not error, under *Osenbrock*, to omit that impairment from the hypothetical.

**d. Whether the ALJ failed to fulfill his duty to fully question the claimant and develop the record regarding the physical and mental demands of the Plaintiff's past relevant work.**

The process that the Social Security Commissioner must follow to determine if a claimant has a disability is divided into five-steps. 20 C.F.R. 1520 (2008). When the first step fails to determine the issue, the commissioner continues to the next step, until he reaches a conclusion. *Id.* The steps are identified as follows:

1. Determining whether the claimant performs "substantial gainful activity."
2. Determining whether the claimant suffers a severe, medically-determinable impairment.
3. Determining whether the claimant's impairment qualifies as a disability.
4. Determining whether the claimant retains sufficient "residual functional capacity" to continue working.
5. Determining whether the claimant retains sufficient "residual functional capacity" to adjust to different work.

This "five-step" process formally consists of additional steps that appear in the figure that follows.



i. "Step 1": The Claimant does not engage in substantial gainful activity.

Substantial gainful activity (SGA) consists of significant mental or physical activity that one typically performs for pay or profit.  20 C.F.R. § 404.1572 (2008).  When the Social Security Commission finds that a claimant performs SGA, he is considered to be "not disabled."  20 C.F.R. § 404.1520.  The ALJ found here that the claimant had not performed SGA in well over 12 months.  (TR 23.) Therefore,  the evaluation process required the ALJ to proceed to the next step.  20 C.F.R. § 404.1520(a)(4).

### ii. "Step 2": The Claimant suffers from severe, medically-determinable mental impairments.

An impairment is severe if it significantly limits a claimant's ability to engage in basic work activities.  20 C.F.R. 404.1521(a).  "Basic work activities" consist of those activities that most jobs require.  20 C.F.R. 404.1521(b).  If a claimant can perform basic work activities, the commission considers the claimant "not disabled."  20 C.F.R. § 404.1520(c).  Even if a claimant is impaired, the impairment must 1) be expected to result in death, 2) be expected to last for at least 12 continuous months, or 3) have lasted for 12 continuous months, otherwise the commission considers the claimant "not disabled."  20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509.

The ALJ found that Plaintiff suffered severe impairments.  (TR 23.)  He did not make an explicit finding as to the duration of Plaintiff's impairments, but seems to have implicitly accepted Plaintiff's alleged onset date of June 18, 1993.  (TR 22-29, 351-410.)  Because the ALJ found that the claimant suffered severe impairments and implicitly accepted that those impairments afflicted Plaintiff for more than 12 continuous months, the ALJ could not classify the claimant as "not disabled," and the evaluation process required him to proceed to the next step.  20 C.F.R. § 404.1520 (2008).

### iii. "Step 3": The severity of the claimant's impairment does not implicitly qualify the claimant for disability.

If the claimant's impairment meets or exceeds the requirements of 20 C.F.R. § 404, Sub-part P, Appendix 1, then the commissioner considers the claimant "disabled."  20 C.F.R. § 404.1520(a)(4)(iii) (2008).  Here the ALJ found that the impairments in the record did not meet the requirements of Appendix 1, and the impartial medical expert testified that the impairments did not meet or equal any of the Appendix 1 listings.  (TR 24.)  Because the ALJ found that the claimant's impairments did not satisfy Appendix 1, the evaluation process required him to proceed to the next step.  20 C.F.R. § 404.1520 (2008).

**iv. "Step 4": Since the record does not detail whether the claimant's residual functional capacity is sufficient to perform his past relevant work, the ALJ failed to adequately develop the record.**

When a claimant's impairment does not implicitly qualify the claimant for disability, the ALJ must assess and make a finding about the claimant's residual functional capacity (RFC). The ALJ must then apply the RFC assessment to determine whether the claimant can still perform past relevant work (PRW). 20 C.F.R. § 404.1520(e) (2008). This requires the ALJ to compare the claimant's RFC to the demands of the claimant's PRW. 20 C.F.R. § 404.1520(f) (2008). PRW consists of SGA (substantial gainful activity, defined above) in which the claimant has participated 1) within the past 15 years and 2) for enough time that the claimant has learned how to do the job. 20 C.F.R. §§ 404.1565(a) (2008); 20 C.F.R. 416.965(a) (2008).

The conclusion as to whether the claimant retains the RFC to perform PRW must be developed and explained *fully.* SSR 82-62 [1975-1982 Transfer Binder] Soc.Sec.Rep. (CCH) 812 (1982) (emphasis added). The analysis must include 1) a finding of fact as to the individual's residual functional capacity, 2) a finding of fact as to the physical and mental demands of the past occupation, and 3) a finding of fact that the individual's residual functional capacity would permit a return to his or her past job or occupation. *Id.* Furthermore, "for a claim involving a mental/emotional impairment, *care must be taken* to obtain a *precise description* of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." *Id.* (emphasis added).

In the case at bar, the ALJ made a finding of fact as to the claimant's residual functional capacity. (TR 28-29.) He determined that the claimant "had no exertional limitations and had mild limitation on his ability to perform the activities of daily living, maintain concentration, persistence and pace, mild to moderate limitation in his ability to maintain social interactions, and 1-2 episodes of decompensation during the period of a

year." (*Id.*)  The ALJ also made a finding of fact that the claimant's residual functional capacity would allow him to perform his past relevant job.  (TR 29.)  However, he did *not* make a finding of fact as to the physical and mental demands of the claimant's past job, nor did he analyze what aspects, if any, of the claimant's past work were likely to produce stress or anxiety.  (TR 22-29.)

At the second hearing of this matter, the ALJ asked the vocational expert (VE) to summarize Plaintiff's skill set, and the VE did so.  (TR 405-06.)  The ALJ then asked the VE if, in his opinion, Plaintiff could perform his past relevant work.  (TR 406-07.)  The VE said yes.  (TR 407.)  The ALJ then moved on and asked about the availability of the types of jobs that Plaintiff could perform.  (TR 407-08.)  This Court could not find a point in the record where the ALJ determined the physical and mental demands of Plaintiff's employment, as required by SSR 82-62.  Furthermore, in his opinion the ALJ makes findings as to Plaintiff's residual functional capacity and ability to perform past relevant work, but makes no finding as to the physical and mental demands of that job.  (TR 28-29.)

The Government argues that the ALJ's use of a vocational expert to assess the demands of the claimant's past work provided a sufficient basis for the ALJ to support his conclusion, and that the vocational expert summarized the relevant evidence and came to an informed conclusion.  Assuming, *arguendo*, that the ALJ could delegate his fact-finding function to a vocational expert in this manner, the Government mischaracterizes the record and the vocational expert's testimony.  The transcript of the administrative hearing reveals that there was no discussion between the vocational expert and the ALJ of the physical or mental demands of Plaintiff's past relevant work.  The VE gave a cursory summary of Plaintiff's past relevant jobs.  Then, the VE was told by the ALJ that Plaintiff had no exertional limitations and had only the limitations indicated by Dr. Singer, namely mild restriction of activities of daily living, mild to moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation.  (TR 406.)

Based on this summary, the ALJ asked the VE if the claimant could perform all his past relevant work. (TR 406-407.) The VE answered yes. (TR 407.) There was no further discussion. The record does not satisfy SSR 82-62, which requires a *fully developed* record explaining whether the claimant has the residual functional capacity to perform past relevant work, taking into account the mental and physical requirements of that work.

The ALJ's failure properly to develop the record requires this Court to remand the claimant's case for further administrative hearing. On remand, before determining whether claimant has established that he can no longer perform a particular past job, the ALJ should make factual findings as to 1) the mental and physical requirements of the job, including a precise description of the particular job duties that could produce tension and anxiety, and 2) whether claimant can perform those duties, given his physical and mental impairments as reflected in his residual functional capacity.

## Conclusion and Order

This matter is therefore remanded to the ALJ with instructions to develop the record with regard to 1) the mental and physical requirements of Plaintiff's past relevant work, including a precise description of the particular job duties that could produce tension and anxiety, and 2) whether Plaintiff can perform those duties, given his physical and mental impairments as reflected in his residual functional capacity. In all other regards, the decision of the ALJ is affirmed.

IT IS SO ORDERED.

DATED: August 18, 2008

James Larson
Chief Magistrate Judge